First Nat. Bank v. Town of Tome, 23 N. M. 255

[No. 1969. September 15, 1917.]

# FIRST NAT. BANK OF ALBUQUERQUE v. TOWN OF TOME.

## SYLLABUS OF THE COURT.

1. A right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies.          P. 267

2. One who avails himself by action, or by defense to an action, of part of an indivisible claim or cause of action, thereby estops himself from again maintaining an action or defense founded upon it.          P. 268

3. Possession will be presumed to accompany ownership until the contrary is proved; a constructive possession, consequent upon legal ownership is sufficient as against mere trespassers, that is, as against those who do not show some right of possession.          P. 269

4. Where plaintiff's right of action is based upon adverse possession of land within land grants, and where such possession has been shown for ten years, under section 3364, Code 1915, the possessor holding by virtue of a deed of conveyance, or other grant purporting to convey an estate in fee simple, and no claim by suit in law or equity, effectually prosecuted, shall have been set up or made to said lands within said period, then the person or persons so holding adverse possession shall be entitled to keep and hold the land in preference to all and against all.          P. 270

5. Where title is claimed by adverse possession under color of title, the possession must be actual, and not constructive, in its nature. It must be a possession subjecting the land to the will and dominion of the occupant, and must be evidenced by those things essential to its beneficial use, and must be clearly defined, open, actual, visible, exclusive, hostile, and continuous.          P. 272

6. Held, there is no evidence in this case showing the extent of the claimed possession of appellant, or negativing the fact that the legal owner of the premises might have been exercising dominion over the property.      P. 272

7. Findings must be of the ultimate facts which the evidence is intended to establish sufficient in themselves without inference or comparison or the weighing of evidence to justify the application of the legal principles which must determine the case.      P. 274

8. If the findings of the trial court support all the essential allegations of the complaint, it must necessarily follow that the findings of fact support the judgment, where the issues are found in favor of plaintiff, and examination of the findings of fact will disclose that they support all the necessary allegations of the complaint, and therefore support the plaintiff's cause of action, which is all that is required.
      P. 274

9. By the confirmation by Congress of lands granted by the King of Spain nothing more than a relinquishment of quitclaim was intended, or accomplished and adverse rights, being excepted, were not affected, if valid.

Appeal from District Court, Valencia County; Neblett, Judge.

Action by the First National Bank of Albuquerque against the Town of Tome. Judgment for plaintiff, and defendant appeals. Affirmed.

Neil B. Field, of Albuquerque, for appellant.

Title to unallotted lands in Tome Grant passed in common to the community of the town upon confirmation and patent by U. S. Bond v. Barela heirs, 229 U. S. 492; U. S. v. Sandaval, 167 U. S. 278.

Under laws of Spain and Mexico prefects had no power to make grants of public land.

Ohm. v. San Francisco, 92 Cal. 451; Rio Arriba L. & C.

Co. v. U. S., 167 U. S. 298; Crespin v. U. S. 168 U. S. 217; Bergere v. U. S. 168 U. S. 66; Bond v. Barela heirs, 229 U. S. 488, 593.

Title to land in question is res adjudicata as against plaintiff. Southern Pac. R. R. Co. v. U. S. 168 U. S. 1, 54; Last Chance M. Co. v. Tyler M. Co., 157 U. S. 683; New Orleans v. Citizen's Bank, 167 U. S. 371.

Unreasonable delay in asserting right is bar to relief. Martin v. Gray, 142 U. S. 236, 239. See also Maxwell v. Kennedy, 8 Howard 210; Farish v. Mining Co., 5 N. M. 279.

Section 3364, Code 1915, construed in Montoya v. Heirs, 16 N. M. 349, 232 U. S. 375.
As to adverse possession, see Gildersleeve v. Min. Co. 6 N. M. 27; Hunnicutt v. Payton, 102 U. S. 333.

A. B. McMillen, of Albuquerque, for appellee.
Article 77, quoted by court in Crespin v. U. S. 168 U. S. 212 gives power to prefect to distribute common lands where litigation is not pending.

Judgment bars parties from opening same subject of controversy formerly decided.
23 Cyc. 436; Stark v. Starr, 94 U. S. 477-485; The Haytian Republic, 154 U. S. 118, 125; U. S. v. California etc., Land Co., 192 U. S. 355, 358.

While possession is an important element of title, it is not a necessary element, as seizin follows the legal title, and possession in accordance with the legal title is presumed.
Gonzales v. Ross, 120 U. S. 605, 629; Chesapeake, etc., Ry. v. Washington, etc., Ry., 199 U. S. 247, 249.

All presumptions are in favor of the legal holder, and the burden of overcoming that rests with him who assails the legal title.

Evans v. Welsh (Cal.) 68 Pac. 79; 1 Washburn Real Property, p. 63.

If several persons have a mixed possession of land and one of them has title to it, the seizin belongs to him only. 1 Washburn Real Property, p. 63.

Adverse possession must be actual, open, visible, notorious, continuous, exclusive, hostile, and under claim of right.

Johnston v. Albuquerque, 12 N. M., 20, 72 Pac. 9; Gentile v. Kennedy, 8 N. M. 347, 354, 45 Pac. 879; Probst v. Trustees, 3 N. M. 373, 5 Pac. 702; Jenkins v. Maxwell Land Grant Co. et al, 15 N. M. 281; 107 Pac. 739; Armstrong v. Morrill, 14 Wall. 120-145; Hogan v. Kurtz, 104 U. S. 773.

Findings supported by substantial evidence are conclusive.

Badaracco v. Badaracco, 10 N. M. 761; Gale & Farr v. Sales, 11 N. M. 211; Romero v. Coleman, 11 N. M. 533; Marquez v. Land Grant Co., 12 N. M. 445; Hancock v. Beazley, 14 N. M. 239; Richardson v. Pierce, 14 N. M. 334; Fullen v. Fullen, N. M. 153 Pac. 294; Frazier v. tSate Savings Bank, N. M. 137 Pac. 592-594; Nichol v. Coulter, 159 Pac. N. M. 673.

### STATEMENT OF FACTS.

For the sake of brevity, and in order to avoid confusion, the First National Bank, appellee, will be called the plaintiff, and the town of Tome, appellant, will be referred to as defendant, which was the relation of the parties in the court below.

The complaint alleged that the plaintiff was the owner in fee simple and possessed of the real estate described therein; that the defendant, as well as unknown claimants who were made parties defendant, makes some claim to said real estate adverse to that of the plaintiff. The

complaint then proceeds in the usual form, and prays that plaintiff's title be quieted and set at rest.

The defendant answered, denying that the plaintiff was the owner in fee simple and possessed of the real estate described, alleging that said real estate is within the exterior boundaries of the Tome land grant, granted by the King of Spain to the predecessors in title of the defendant in the year 1739, said grant having been confirmed by act of Congress approved on the 22d day of December, 1858, and on the 5th day of April, 1871, patented to the predecessors in title of the defendant; that for more than ten years next after the issuance of patent, and continuously to date of institution of suit, no claim by suit in law or equity effectually prosecuted has ever been set up or made by the plaintiff, or by those under whom it claims, to said real estate, and that by force of the statute in such case made and provided the defendant is entitled to keep and hold said lands; that the plaintiff and those under whom it claims neglected for more than ten years to avail themselves of any title they may have had by suit at law or in equity effectually prosecuted against the defendant or its predecessors in title, whereby, by force of the statute, the plaintiff's cause of action became and is forever barred; that for more than ten years next before the institution of suit the defendants and its predecessors in title have been in open, notorious, and adverse possession of said real estate continuously and in good faith and under color of title, and have paid the taxes lawfully assessed against the same, whereby and by force of the statute the plaintiff is disabled to maintain its action; that the plaintiff's alleged cause of action did not accrue within ten years next before the institution of suit—and pleads the ten-year statute of limitations in bar of suit.

In its reply the plaintiff joined issue upon the allegations of the answer, and affirmatively pleaded: (1) That the plaintiff and its predecessors in title had for more than fifty years had possession of the land described in the complaint, holding and claiming the same by virtue of deeds of conveyance purporting to convey an estate in fee simple,

and that no suit at law or in equity had been effectually set up or prosecuted within that time to said lands, and that by virtue of the statute the plaintiff was entitled to keep and hold he same; (2) that the defendant had neglected and failed for more than ten years to avail itself of any title by suit at law or in equity effectually prosecuted against the defendant or its predecessors in title— and pleads the statute of limitations of ten years against any defense the defendant may have.

It will thus be seen that the following issues were presented in the lower court:

First, by the plaintiff:

(a)  Title in fee simple under an alleged grant made by Prefect Francisco Sarracino March 1, 1842, and individual allotments made thereunder by Jose Pino, justice of the peace.

(b)  Possession for more than fifty years, holding and claiming the same by virtue of deeds of conveyance purporting to convey an estate in fee simple, no claim by suit at law or equity, effectually prosecuted, having been set up or made by the defendant within that time.

(c)  That the defendant failed for more than ten years to avail itself of any title legal or equitable, by suit in law or equity effectually prosecuted against the plaintiff, who at all times was in possession of said real estate.

Second, by the defendant:

(a)  Title in fee simple under grant from the King of Spain, act of confirmation of Congress, and patent of the United States.

(b)  That for more than ten years after the issuance of patent and continuously until the institution of suit, defendant was in possession of said land, and that no suit or claim at law or equity effectually prosecuted, had ever been set up or made by the plaintiff.

(c)  That if the plaintiff ever had any claim to said lands, it neglected for more than ten years to avail itself of such claim or title by suit at law or equity and effectually prosecuted against the defendant, who was at all times in possession of said land.

(d) That for more than ten years before the institution of the suit, the defendant has been in adverse possession of said land, in good faith under color of title, and paid all taxes lawfully assessed against the same.

(e) That the plaintiff's cause of action did not accrue within ten years next before the institution of suit, and pleads and relies upon the statute of limitation in bar.

In support of its claim, of title in fee to the lands described in the complaint, plaintiff introduced in evidence, as Exhibit Y, a Spanish document, a translation of which is as follows:

"At the place of Pajarito, in the jurisdiction of San Felipe Neri, of Albuquerque, on the first day of March, one thousand eight hundred and forty-two, presented themselves Pedro Perea, Juan Antonio Baca, and Antonio Samora, neighbors of the jurisdiction of Tome, saying that they represented twelve other residents as well as themselves as heirs and grantees of the grant of the new settlement of Our Lady of the Conception of Tome Dominguez, and stated that in their said grant there is a place called Los Ojuelos which is in the plain distant four leagues from the parish church and two leagues from the Manzano Mountains, and they request that the adjacent lands which can be irrigated by the waters of said springs be partitioned out to them for settling upon the said place, and that it may serve them for the maintenance of their large families and for the protection of travelers, of the shepherds, and of the wood carriers who go to the mountains from the savage Indians who constantly depredate. And accepting it, their petition, as presented and granting the prayer which the said parties make therein, I grant their petition, and I decree and order that they appear before C. Jose Pino, the only justice of the peace of said jurisdiction of the said fifteen petitioners, in order that he deliver and place them in possession of their land, giving to each one a hijuela, that it may serve them as title for all time. The partition of the land will be made of that which is found between the road which runs to the north of a small canyadita where there breaks out a spring of water and on the side hill there are some ruins of houses, and on the south the Cuerbo road up to the spring of the same name. The said Judge Alcalde will parcel out first to each one of the petitioners fifty Castilian varas, measuring from east to west, from the edge of the reservoir, which will serve them for gardens, and thence forward, said partition being concluded, he will measure out one hundred and fifty Castilian varas to each one for farming, which two said measurements, the one for gardening and the other for farming, will be included between the Ojuelos road above mentioned and the Cuerbo road.

"I thus provided, ordered, and signed the said day, month and year, signing the present with the witnesses of my assistance for the lack of secretary, of which there is none in this territory, and on common paper, there being none stamped.

"Of which I give faith.

"Of .assistance:    Francisco Sarracino.

                                        "Rubric.

"Jose Antonio Chavez, Rubric.        Prefect.
"Of asssitance:                `
"Juan Torres.
"Of assistance:
"Jose Felz Benairdes.
"As received, March 2, 1842.

                                    "Jose Pino,. Rubric."

In pursuance of the supposed authority conferred by the foregoing instrument, Jose Pino, justice of the peace, on the 8th day of March, 1842, made partition of the land described therein among the several petitioners by execution and delivery of hijuelas, seven of which were introduced in evidence by the.plaintiff, all being substantially identical with plaintiff's Exhibit D, which is as follows:

"At the place of Tome, on, the 8th day of the month of March, 1842, I, citizen, Jose Pino, the only justice of the peace of this jurisdiction, in conformity with the decree issued by the sir prefect on the 1st day of March of the same year, in order to comply therewith, and in conformity thereto, I proceeded to the land of Los Ojuelos to verify the partition, and drawing the measurement from east to west, measured one hundred and fifty varas of which in the name of the · sovereignty before the witnesses of my assistance with whom I act, I gave posssession to Francisco Campos, which have for boundaries on. the east by lands of citizen Felipe Balles, on the west by lands of citizen Jose Abreu, on the north by the road of Los Ojuelos, on the south by the road of El Cuerbo, and having made the demonstrations which in such cases are observed, I admonished him to put his boundaries or monuments in a permanent manner to avoid disputes. I extended to him the present schedule to serve him as a title for the justification of his legitimate property, acquired on common paper, the corresponding kind not being found, and obligated to annex it when found. I signed it with those of my assistance. I give faith.         ·

          "Jose Pino.                      Rubric.
"Fees:   $3.00.
          "Of assistance.
"Rubric.          Bartolome Romero.        Rubric.
"Of assistance.
          "Jose Ascensio Baca.         Rubric."

Plaintiff's paper title is based entirely upon hijuelas similar to the above and executed on authority of the supposed grant by the prefect Francisco Sarracino, set out as above. The plaintiff's immediate grantor was William J. Park, by deed dated December 20, 1898, and Park obtained whatever paper title he had by mesne conveyances from the holders under the hijuelas executed by the justice of the peace Jose Pino.

The defendant claimed paper title under the following instrument: (1) Grant from the King of Spain made in the year 1739 to the predecessors in title of defendant; (2) act of Congress confirmatory of the foregoing grant; (3) patent from the United States patenting said land grant to the town of Tome. Both the act of confirmation by Congress and the patent issued in pursuance thereof contained the provision that each should "only be construed as a re-linquishment of all title and claim of the United States to any of said lands, and shall not affect any adverse valid rights, should such exist."

The trial court made the following findings of fact and conclusions of low:

#### "Findings of Fact.

"(1) That said plaintiff is a corporation duly organized under the laws of the United States, with its principal place of business in the city of Albuquerque, N. M., and that the defendant, the town of Tome, is a corporation organized under the laws of New Mexico, with its principal place of business in the county of Valencia.

"(2) That in the year 1739 a tract of land which was afterwards fully described in the patent of the United States was given and granted by the King of Spain to the predecessors in title of the defendant, the town of Tome; and the predecessors in title of the said defendant, the town of Tome, were placed in possession of said tract of land in accordance with the laws, rules, and customs of the said kingdom of Spain; that on the 6th day of August, 1856, the said predecessors in title of the defendant, the town of Tome, presented to the surveyor general of the territory of New Mexico, their claim for the confirmation of the said grant, and thereafter the said surveyor general of the territory of New Mexico duly recommended the said claim for confirmation to the Congress of the United States; that on the 22d day of December, 1858, by an act of Congress of the United States, duly enacted, the said grant of land was duly confirmed to the predecessor in

title of the defendant, the town of Tome, and thereafter, and on the 5th day of April, 1871, a patent was duly issued by the United States of America to the predecessors in title of the said defendant, the town of Tome.

"(3) That the tract of land described in the complaint in this case is within the exterior boundaries of the grant mentioned in the foregoing paragraph.

"(4) That on the 18th day of May, 1885, Cyrus H. Kirkpatrick took possession of the following described land, to-wit: 'The land and premises known as the Los Ojuelos ranch, being in the Tome grant, in the county of Valencia, state of New Mexico, bounded on the north by the public road running from the town of Tome to the Rocky Mountains, and on the east by the top of the springs, on the top of the hills, and on the south by the road known as the "Cuervo," and on the west measuring seven hundred and fifty (750) yards from the pond of Ojuelos ranch, from thence running west three thousand varas (3,000), being within the exterior boundaries of the land and premises described in plaintiff's complaint, under and by virtue of a deed of conveyance made by Charles W. Lewis, and wife, purporting to convey to him an estate in fee simple in said premises, and held and claimed the same and was in the actual possession thereof until the year 1893; That during the year 1893 the said Cyrus H. Kirkpatrick was dispossessed of a portion of the land and premises above described by virtue of a writ of possession issued out of the district court of Socorro county in that certain cause entitled Jose M. Barela et al. v. Cyrus H. Kirkpatrick, No. 2315. The portion of said premises of which Cyrus H. Kirkpatrick was dispossessed of being described as follows: 'All that portion of land situate and being north and east of the lines beginning at the northwest corner of the house claimed and occupied by Cyrus H. Kirkpatrick in the year 1893, beginning at said northwest corner of said house, thence south 48 degrees 30 minutes east 46.30 chains to a point one hundred yards south of the Lemita spring on the east boundary of the lands above described, and beginning at the northwest corner of the said Kirkpatrick house, running thence due north to the northern boundary of the lands above described containing approximately seventy-five and 91-100 (75.91) acres, more or less.'

"(5) That for more than ten years immediately prior to the 18th day of May, 1885, Charles H. Lewis, the grantor of said Cyrus H. Kirkpatrick, and his predecessors in title, were in the actual possession of the said lands described in finding No. 4, holding and claiming the same by virtue of deeds of conveyance purporting to convey an estate in fee simple to said Charles W. Lewis and his predecessors in title, and that no claim by suit in law or equity, effectually prosecuted, had been set up or made to the said lands, tenements, and hereditaments within the said period of ten years.

"(6) That the plaintiff herein derived its title through mesne conveyances from said Cyrus H. Kirkpatrick, and the court finds that the plaintiff, the First National Bank of Al-

buquerque, is the owner in fee simple and entitled to the possession of all that portion of land and premises described in plaintiff's complaint, as follows: 'The land and premises known as the Los Ojuelos ranch, being in the Tome grant, in the county of Valencia, state of New Mexico, bounded on the north by the public road running from the town of Tome to the Rocky Mountains, and on the east by the top of the springs, on the top of the hills, and on the south by the road known as the "Cuervo," and on the west measuring seven hundred and fifty (750) yards from the pond of Ojuelos ranch, from thence running west three thousand (3,000) varas, except that portion thereof situate in the northeast corner, being the lands which the said Cyrus H. Kirkpatrick was dispossessed of in the year 1893, under and by virtue of a writ of possession issued out of the district court of Socorro county in cause No. 2315, the same being about seventy-five and 91-100 (75.91) acres.'

"(7) That the defendants have no claims or interest in that portion of the land and real estate described in findings No. 4, except seventy-five and 91-100 (75.91) acres more or less situate in the northeast corner of said tract, and being north and east of the lines beginning at the northwest corner of the house claimed and occupied by Cyrus H. Kirkpatrick in the year 1893, beginning at said northwest corner of said house, thence south 48 degrees 30 minutes east 43.60 chains to a point one hundred yards south of the Lemita spring on the east boundary on the lands described in finding No. 4, and beginning at the northwest corner of the said Kirkpatrick house, running thence due north to the northern boundary of the lands described in finding No. 4.

"Conclusions of Law.

"The court therefore concludes as a matter of law from the foregoing facts that the plaintiff is entitled to a decree establishing its title against the adverse claims of the defendant, quieting its title, and adjudging it to be the owner in fee simple to a portion of the lands described in its complaint as follows: The land and premises known as the Los Ojuelos ranch, being in the Tome grant, in the county of Valencia, state of New Mexico, bounded on the north by the public road running from the town of Tome to the Rocky Mountains, and on the east by the top of the springs, on the top of the hills, and on the south by the road known as the 'Cuervo,' and on the west measuring seven hundred and fifty (750) yards from the pond of Ojuelos ranch, from thence running west three thousand (3,000) varas, except so much thereof as is described as follows: All that portion of land situate and being north and east of the lines beginning at the northwest corner of the house claimed and occupied by Cyrus H. Kirkpatrick in the year 1893, beginning at said northwest corner of said house, thence south 48 degrees 30 minutes east 43.60 chains to a point one hundred yards south of the Lemita spring on the east boundary of the lands described in finding No. 4, and beginning at the north-

west corner of the said Kirkpatrick house, running thence due north to the northern boundary of the lands described in finding No. 4, containing approximately seventy-five and 91-100 (75.91) acres, more or less.

"[Signed]  Colin Neblett, Judge."

Other facts, so far as need be, will be referred to in our opinion.

From the judgment in favor of plaintiff below, based upon the findings and conclusions set out, this appeal was taken.

### OPINION OF THE COURT.

HANNA, C. J. (after stating the facts as above). The first point presented by the brief of appellant is that the title to the unallotted lands of the Tome grant remained in the crown of Spain, subject to future granting by the king and by succeeding sovereignties, and passed in common to the community of the town of Tome by confirmation and by patent of the United States. The Tome grant was made in the year 1739, and confirmed by act of Congress in the year 1858. The Supreme Court of the United States, in the case of Bond v. Barela's Heirs, 229 U. S. 492, 33 Sup. Ct. 809, 57 L. Ed. 1292, following the case of the United States v. Sandoval, 167 U. S. 278, 17 Sup. Ct. 868, 42 L. Ed. 168, has held that the Tome grant was a community grant. The act of confirmation and the patent both contain a provision that the confirmation shall only be construed as a relinquishment of all title and claim of the United States to any of the land and shall not affect any adverse valid rights, should such exist.

Bearing in mind that the plaintiff traces a chain of title back to certain allotments made within the Tome grant prior to the act of confirmation, we are at a loss to understand the application of appellant's contention that the unallotted lands of the grant passed to the community of the town of Tome upon confirmation and patent by the United States. This point might be conceded by appellant, and practically is so conceded; yet we do not consider that the point raised calls for a decision at our hands, by reason of the fact that, if appellee's title is

traceable to allotted lands, we are not at this time concerned with the title to unallotted lands within the grant.

We therefore pass to the second point, which is that under the laws of Spain and Mexico prefects had no power to make grants of public lands. Again we do not feel called upon to decide the question raised, because the question is one of adverse possession, as found by the trial court in its findings of fact No. 5, and even though the prefect was without authority to make an allotment within a community grant, which we do not decide, nevertheless, the deed made by the allottee and the paper title resulting *therefrom* would constitute color of title.

[1] The third point raised by appellant is that title to the land in question was adjudicated adversely to plaintiff's grantor and in favor of the defendant in a certain cause, No. 2315, in the district court of Socorro county, in the year 1893. This was a case brought by one Barela and others against Cyrus H. Kirkpatrick. It was a suit in ejectment for a portion of the land described in the complaint in this case. It included certain springs and a small tract of land, as well as the house occupied by Kirkpatrick and his predecessors in title. The plaintiff in the ejectment suit brought their action as tenants in common of the Tome grant. Later the town of Tome, the defendant in this case, was substituted as plaintiff. The land claimed in the ejectment suit was one mile square, and was found to conflict with the land claimed by Kirkpatrick, amounting to about 3,600 acres, to the extent of about 75 acres. All of the deeds upon which the plaintiff in this case predicates its title up to and including the deed of Kirkpatrick were in evidence in the ejectment suit. The ejectment suit rsulted in a judgment in favor of the town of Tome for a lesser tract than that set out in the complaint and for a substantially different tract of land from that described in the complaint. It is appellant's contention that, because the judgment was rendered for the plaintiff in the ejectment suit, resulting in an ouster of Kirkpatrick on June 28, 1893, under a writ of possession, the validity of plaintiff's title was adjudicated adversely to plaintiff's predecessors in title and in favor

of the defendant in the ejectment suit. It is contended by the appellant, in other words, that Kirkpatrick's title was the real issue involved and decided in the ejectment suit, and, the decision having been against its validity, it is res adjudicata in this case, not alone as to the land involved in that suit, but as to all lands described in said title and claimed adversely to the rights of the town of Tome. Authority in support of this contention is cited in the case of So. Pac. R. R. Co. v. United States, 168 U. S. 1, 48, 18 Sup. Ct. 18, 27 (42 L. Ed. 355). The general principle announced in that case is that:

"A right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies."

There can be no quarrel with this statement of the law, and appellee only contends that in the ejectment suit the question submitted to the court and determined was as to the conflict, which was found to be about 75 acres, and from which Kirkpatrick was ejected. The town of Tome in bringing this suit might just as well be argued to concede the Kirkpatrick title as to the remainder of the land called for by his deeds, and not involved in the ejectment suit. The only question put in issue and directly determined by the court was that concerning the conflict between the tract described in the complaint in the ejectment action and the land claimed by Kirkpatrick.

[2] By appellee it is further contended that one who avails himself by action, or by defense to an action, of part of an indivisible claim or cause of action, thereby estops himself from again maintaining an action or defense founded upon it, citing Watkins v. American National Bank of Denver, 134 Fed. 36, 67 C. C. A. 110, and other cases in support of this well-established principle. We can not base a decision favorable to appellant upon its contention in this respect, because, as pointed out by the brief of appellee, the action was a possessory one, and the question was which party showed the better right to the land involved in the suit. Appellee rightfully argues that, for

all the evidence showed, Kirkpatrick may have parted with the land, or the court may have taken the view that the land east of the reservoir was not conveyed to Kirkpatrick's predecessors. It is also shown by appellee's brief in this case that the evidence introduced in the ejectment suit was not preserved. We are therefore unable to say whether or not the town of Tome predicated its action in the ejectment suit upon the same claim or right of action upon which it now predicates its defense in this suit, and that therefore the doctrine of estoppel should prevail. We therefore find no merit in appellee's contention.

[3] The fourth point presented by the brief of appellant is that plaintiff's claim is stale; therefore contrary to equity and good conscience. It is argued that the sheriff's return on the writ of possession in the ejectment suit showed it was executed on the 27th day of June, 1893, by placing the agent of the town of Tome in possession. It is further contended that the evidence discloses that Kirkpatrick then went away, and from that time to the time this suit was brought all the land described in the plaintiff's complaint had been in the possession of the board of trustees of the town of Tome, that the owners of the grant had pastured their cattle and sheep over this land, and that the town of Tome had paid all the taxes levied and assessed upon said land. This alleged possession of the defendant will be considered under the next point raised. It is also argued that no possession by any one on behalf of the plaintiff is claimed. The defendant (appellant here) availed itself of this objection by a motion for judgment at the close of plaintiff's case. It cannot be seriously contended that the sheriff in executing the writ of possession in the ejectment suit attempted to place the agent of the town of Tome in possession of anything more than the 75 acres in conflict. Although the evidence shows that Kirkpatrick went away and remained away, that fact would not necessarily negative possession of others through him or possession of his agents. The element as to payment of taxes which is raised by this point will be considered later in this opinion. As to the alleged admission of counsel it

appears that counsel was asked whether the plaintiff had been in possession or whether plaintiff had shown possession; the answer being that plaintiff relied on the presumption which proof of title carried. As was said by the Supreme Court of the United States in the case of Gonzales v. Ross, 120 U. S. 605, at 629, 7 Sup. Ct. 705, at 718 (30 L. Ed. 801):

"By the rules of law possession will be presumed to accompany ownership, until the contrary is proved; a constructive possession consequent upon legal ownership is sufficient as against mere trespassers; that is, as against those who do not show some right of possession."

So that at the time the plaintiff closed its case it could with perfect propriety rest upon the presumption that possession follows legal ownership, and appellant's attack at that time was not well taken.

[4] The fifth point raised by appellant's brief is that plaintiff's suit was barred by the statute of limitations of ten years. Appellant supports this point by the argument that, even though plaintiff's grantors were at the time of Kirkpatrick's eviction in 1893 possessed of title in fee, and that the judgment in the ejectment suit did not have the effect of res adjudicata as to that part of the land not actually described in the judgment, nevertheless the action is barred by the statute of limitation. Appellant loses sight of the fact that the plaintiff's right of action is based upon adverse possession of land within land grants, and where such possession has been shown for ten years, under section 3364, Code 1915, the possessor holding by virtue of a deed of conveyance, or other grant purporting to convey an estate in fee simple, and no claim by suit in law or equity effectually prosecuted shall have been set up or made to said lands within said period, then the person or persons so holding adverse possession shall be entitled to keep and hold the land in preference to all and against all. It might as well be argued that the right of the town of Tome which arose as to the common lands after the confirmation by Congress in 1858 should have been prosecuted by the proper proceeding prior to 1868, or be for-

ever barred.   The court found that on the 18th day of
May, 1885, Cyrus H. Kirkpatrick took possession of the
land described in the complaint, and continued in actual
possession thereof until 1893, and that for more than ten
years immediatley prior to the 18th day of May, 1885, the
grantor of Kirkpatrick and his predecessors, in title were in
actual possession of said lands, holding same by virtue
of deeds of conveyance purporting to have conveyed in
fee simple.   No finding as to possession since 1893 was
made.   It is argued that the court evidently based its judg-
ment upon the provisions of section 3364, Code 1915,
the statute last referred to, and failed to give force and
effect to section 3365, or that portion thereof which is
contended was in force at the time the town of Tome is
alleged to have atken possession of the land of Kirk-
patrick after his eviction in 1893, and which provides an
absolute bar after ten years for any suit in law or equity
for the recovery of lands against any one in adverse pos-
session, and further provides that all suits for recovery
of any lands shall be brought within ten years next after
the title or the cause of action accrued.   It is argued that,
although at the time of his eviction and alleged abandon-
ment of all possession Kirkpatrick had title in fee to that
part of the land described in the complaint and not cov-
ered by the judgment in ejectment; that the record shows
that the town of Tome entered into possession of all of said
lands, intending to usurp the entire possession, and to oust
Kirkpatrick from his entire freehold, if he had any, and
that upon such entry his cause of action accrued and
became absolutely barred ten years thereafter.   The ques-
tion therefore becomes one of whether appllant has es-
tablished title by adverse possession as against appellee.

Examination of the evidence of the several witnesses
upon this subject discloses that a number of people, resi-
dents of the town of Tome, had grazed stock upon the
land in question, and had watered stock at springs on the
land.   Appellee contends that this   last   action   is   not
sustained by the facts, and that the grazing and watering
of stock upon the land in controversy does not indicate

anything more than an occasional trespass by some individual, and does not constitute that continuous, open, notorious, exclusive and hostile possession under claim of right necessary to constitute adverse possession under the statute.

Appellee argues that there is no pretense that the town of Tome had any one in possession of the ranch known as Los Ojuelos, and that all that was proved was that certain individuals from time to time during the period of 20 years antedating the present suit grazed over the land in question, and had sometimes watered their herds upon said land, sometimes grazing and watering them elsewhere. It is pointed out that the individuals who testified to this state of facts did not claim title to this land, and that mixed possession cannot give title to any one. It is claimed that the possession, if any, was not hostile, because there was no claim of exclusive right, and that there is no showing that it was either continuous, open, visible, or notorious.

[**5, 6**] Taking all the evidence as a whole, we cannot agree that the appellant has shown that character of adverse possession necessary to be shown under the statute, and that as a result plaintiff's suit was barred by the statute of limitation of ten years. In the case of Montoya v. Thomas B. Catron and Others, 166 Pac. 909, recently decided, but not yet officially reported, it was held that, where title is claimed by adverse possession under color of title, the possession must be actual, and not constructive, in its nature. It must be a possession subjecting the land to the will and dominion of the occupant, and must be evidenced by those things essential to its beneficial use, and must be clearly defined, open, actual, visible, exclusive, hostile, and continuous. In examining the testimony in that case, it was shown that one of the witnesses testified as to seeing cattle and sheep owned by Rael on the place, but it is pointed out by the court that the dates, number of animals, and character or extent of possession was left incomplete and uncertain. The evidence of other witnesses was fully set out and discussed, the court saying:

"The foregoing constitutes all the evidence upon which appellant relies to establish adverse possession on the part of Francisco Rael. This evidence falls far short, we·believe, of establishing with that degree of certainty required, the continuity of the possession of Francisco Rael. There is not a word of testimony going to show the extent of his claimed possession or negativing the fact that the legal owner of the premises might not have been exercising dominion over the property, or that others were not using the premises in common with Rael. We think, therefore, that the court was justified in finding that appellant failed to sustain the burden which was upon him by establishing adverse possession by Rael by clear and convincing testimony."

Applying the reasoning of the court in the quotation just made to the case at bar, we conclude that there is no evidence in this case showing the extent of the claimed possession or negativing the fact that the legal owner of the premises might have been exercising dominion over the property; in other words, there is nothing to show an exclusive possession, and for that reason the possession claimed in the case at bar, as in the case of Montoya v. Catron et al., failed to measure up to the rule which is adopted in that case.

Our attention is directed to the record in the matter of tax payments. It appears that the only returns made by the defendant, the town of Tome, were for the year 1904, and only for 80,000 acres of land, for 1913, when the assessor made an assessment upon 20,000 acres of land, which was later raised to 88,000 acres, and in the year 1914, when the president of the board of trustees of the town of Tome made a return of 75,000 acres, all of which, it is contended, does not exclude ownership by the plaintiff and constitute evidence of payment of taxes under adverse possession. It is also pointed out in this connection that in an answer by the president of the defendant corporation in a tax suit filed prior to the institution of the present suit, it was set out that the Tome land grant when confirmed comprised 121,594 and a fraction acres, but by reason of the fact that the agricultural lands within said land grant situated in the Rio Grande bottoms have been and still are owned by divers persons, and by reason of the fact that a tract of 3,000 acres had been by the trus-

tees of the defendant corporation conveyed to one Jaramillo, and the further fact that a tract of said land grant formerly claimed by one Cyrus H. Kirkpatrick, comprising as defendant is informed and believes, several thousand acres, is now claimed by the the First National Bank, defendant alleges, upon information and belief, it is the owner of and vested with the legal title to not to exceed 100,000 acres of the total acreage originally included within said Tome grant. While these allegations in the tax suit would not constitute an estoppel, they do not tend to negative the contention here made that the evidence in the record discloses that the town of Tome was in open, notorious, continuous, hostile, and adverse possession of the tract in question, coupled with the payment of taxes, and would tend to support the conclusion evidently arrived at by the trial court that such adverse possession and payment of taxes had not been shown.

The statute (section 3365, Code 1915) provides that, to establish adverse possession within the meaning of the law, the party claiming adverse possession, his predecessors or grantors, must have paid all the taxes for a period of ten years upon the land or interest claimed. As we have pointed out, the defendant had only made returns for the years 1904 and 1914. The property had been assessed by the assessor in the year 1913, but in no one of the assessments does it appear that the property returned or assessed included the property claimed by the plaintiff. The returns were for a smaller acreage than had been originally included in the grant, so that it cannot be presumed that the return of the property necessarily included all the lands within the exterior boundaries of the grant. For these reasons and the other grounds heretofore referred to, we conclude that the defendant did not show a payment of taxes upon the land in question with that conclusiveness necessary to meet the conditions of the statute and support its title by adverse possession.

[7, 8] The sixth point relied upon by appellant is that the findings of fact do not support the judgment. It is argued that there is no finding of fact in reference

to possession by any one subsequent to 1893 and prior to the institution of this suit, a period of about 21 years; that by reason of this condition it is to be presumed that neither the plaintiff, nor any one under whom it claims, was in possession since 1893; that the court necessarily had to pass upon the possession since 1893, and if it had found possession in the defendant since that time, the judgment could not be supported. It is urged that a finding as to possession since 1893 should have been made by the trial court as one of the ultimate facts. This court has held that the ultimate facts upon which the judgment is based must be found. Frazer v. State Savings Bank, 18 N. M. 340, 137 Pac. 592. In an earlier case, however, the Supreme Court of New Mexico, discussing the duty of the court in the matter of findings as to the ultimate facts, said:

"And these findings must be of the ultimate facts which the evidence is intended to establish, sufficient in themselves without inference or comparison, or the weighing of evidence, to justify the application of the legal principles which must determine the case." Luna v. Coal R. R. Co., 16 N. M. 71, 113 Pac. 831.

Applying this principle, we conclude that, if the findings of the trial court support all the essential allegations of the complaint, it must necessarily follow that the findings of fact supported the judgment, where the issues are found in favor of the plaintiff, and examination of the findings of fact (which are set out in this opinion) will disclose that they support all the necessary allegations of the complaint, and therefore support the plaintiff's cause of action, which is all that is required. Further, however, it is apparent from what we have said in this opinion as to the possession of the defendant that the court could not properly have found that the defendant was in actual possession of the lands in question since 1893, as the possession shown by it was not of that exclusive character which the statute requires.

Appellant in its seventh point objects to the fifth finding of fact on the ground that it is not supported by the evidence. The fifth finding is that for more than ten

years immediately prior to the 18th day of May, 1885, the grantor of Kirkpatrick and his predecessors in title were in actual possession of the lands in question, holding and claiming the same by virtue of deeds of conveyance, purporting to convey an estate in fee simple, and that no suit in law or equity effectually prosecuted had been set up or made to the land within said period of ten years.

[**9**] It would probably be a sufficient disposition of this contention to say that this finding in our opinion is supported by substantial evidence, and cannot, therefore, be disturbed. We will briefly point out, however, that so far as appellant's contention as to the lack of authority in the prefect is concerned, we have already pointed out that the allotment constituted color of title at least, and his authority, or lack of it, is of no importance. We have also found against appellant's claim as to establishing adverse possession. We have considered carefully the argument seeking to distinguish the Montoya Case, 16 N. M. 349, and while recognizing that the Alameda grant was a private grant, whereas the Tome is a community grant, yet in community grants it was a common practice to make allotments of land to settlers. By the confirmation by Congress to the town of Tome nothing more than a relinquishment or quitclaim was intended or accomplished, and adverse rights being excepted were not affected, if valid. For this reason the alleged superiority of appellant's title, depending upon the confirmatory act of Congress and the resultant constructive possession following such alleged superior title, falls to the ground and need not be considered.

The seventh and last point presented by the brief of appellant is that the court erred in overruling the exceptions of the defendant to the court's findings of fact in failing to make the specific findings of fact indicated in said exceptions. The record does not disclose what the requested findings of fact were, if any were requested of the trial court, but, assuming that the exceptions are sufficiently specific to indicate the character of the objection and to apprise the court of the findings desired, we cannot agree that the court fell into error in this connection. The

findings made by the court in all respects sustain the position of plaintiff as disclosed by its complaint, and the exceptions to the findings are upon the ground that they did not find as to the issues either presented by certain paragraphs of the answer or as to certain issues tendered by the answer, as for instance, with respect to possession of the land since 1893 and the payment of taxes upon the land in controversy. In the case of Fox v. Haarstick, 156 U. S. 674, 15 Sup. Ct. 457, 39 L. Ed. 576, the court said:

"If, then, those findings are to be accepted as justified by the evidence, it is difficult to see how the defendant was injured by the failure of the court to pass, in express terms, on those averments of the answer now urged. * * * In other words, the plaintiff's affirmative case is wholly inconsistent with the truth of the defendant's case, and the conclusive establishment of the truth of the former is necessarily a complete negative of the case asserted by the defendant."

While it is undoubtedly the duty of the trial court to find the ultimate facts, it does not follow that the court must necessarily find upon every possible fact that might arise in the case or to cover in its findings all the details of the case, nor does the duty of the court in this respect require that after findings as to the essential issues in favor of one party or the other it must negative by its findings the opposing contentions of the other side. For this reason, without further discussion, we overrule this assignment.

Finding no prejudicial error in the record, the judgment of the court below is affirmed; and it is so ordered.

PARKER and ROBERTS, JJ., concur.